### 75015. THOMAS et al. v. HILLSON.
(361 SE2d 278)

BEASLEY, Judge.

Mr. and Mrs. Thomas sued Dr. Joseph Hillson. Count One alleged that when Mrs. Thomas sought treatment from Dr. Hillson for a vaginal infection he negligently and incorrectly diagnosed her condition as gonorrhea, gave her medication suitable only for the treatment of gonorrhea and requested that she inform her husband to make an appointment for an examination to determine if he had communicated the disease to her; but that after Mr. Thomas tested negative for gonorrhea, Mrs. Thomas was retested and likewise found to be suffering from another infection, not gonorrhea. She sought damages for pain and suffering. Count Two demanded damages of $50,000 for the intentional and malicious publication of false, slanderous and defamatory statements that Mrs. Thomas had gonorrhea, a communicable disease, to a third party, her husband, which subjected her to family disorder, ridicule and contempt, and damaged her good name and reputation.

Dr. Hillson denied the essential allegations and by amendment asserted the defense that any statements to Mrs. Thomas concerning her condition were made by him in good faith in the performance of a moral private duty between physician and patient. After discovery, he moved for summary judgment, which was granted. Appeal is taken only from the slander count.

While both Mr. and Mrs. Thomas have appealed, Mrs. Thomas is the sole plaintiff in Count Two. She alleges that the oral, in-person communication to her husband, "That I had gonorrhea," constituted slander.

Dr. Hillson averred in his affidavit that his examination of Mrs. Thomas and her symptoms "suggested a pelvic inflammatory disease"; that he told her she needed intravenous antibiotics which could only be given in a hospital; that a media culture disclosed Nisseria Gonococcal organisms and when she asked what was wrong with her he told her that "she had a pelvic inflammatory process which may well be Nisseria Gonorrhea because the original culture grew out Nis-

seria Gonococcal organisms"; that Mrs. Thomas asked him to do a test on her husband and Mr. Thomas came to his office and a culture was taken; that he also retested Mrs. Thomas and neither of the cultures showed Nisseria Gonorrhea, which he told Mrs. Thomas; and that since Mrs. Thomas still had a pelvic inflammatory disease she remained in the hospital for treatment for five days.

Mrs. Thomas contended in her pleadings and affidavit that she was told she had gonorrhea and could be treated either in the doctor's office or in the hospital. She chose to go to the hospital and no additional cultures were taken while she was there. She did not request that a test be done on her husband, she said, but Dr. Hillson stated that she should have her husband call him for an appointment. Dr. Hillson told her on more than one occasion while she was in the hospital that she had gonorrhea and also told her husband that she did. He never explained why he made these statements or apologized for the disruption they caused. Mr. Thomas' affidavit corroborated his wife's.

Whether or not Dr. Hillson told Mr. Thomas that Mrs. Thomas had (or might have) gonorrhea is not dispositive of the issue of slander. Under OCGA § 51-5-7 (2) and (3) statements made in good faith in the performance of a legal or moral duty are privileged communications which bar recovery in actions for slander or libel. See *Auer v. Black*, 163 Ga. App. 787 (294 SE2d 616) (1982); *Zakas v. Mills*, 148 Ga. App. 220 (251 SE2d 135) (1978). "Generally both the question of whether the communication was privileged and whether it was uttered maliciously are jury questions. [Cits.] '(T)o make the defense of privilege complete, . . . good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear.' [Cits.] On summary judgment the issue is simply whether defendant established as a matter of law that he made privileged statements." (Indention omitted.) *Cohen v. Hartlage*, 179 Ga. App. 847, 849 (348 SE2d 331) (1986).

"Contrary to [Mrs. Thomas'] assertions on appeal, 'privilege' did not have to be specifically raised by [Dr. Hillson's] answer in order to become a viable issue on the trial of the case. [Cit.]" *Tetrault v. Shelton*, 179 Ga. App. 746, 748 (2) (347 SE2d 636) (1986). In any event, Dr. Hillson did expressly raise the issue in his amended answer.

Assuming that the communication to Mr. Thomas constituted publication to a third party, the evidence concretely establishes that Dr. Hillson did not "publish" the information because Mrs. Thomas was either the first person to tell her husband, or she invited the publication by sending her husband to see Dr. Hillson for testing or consultation on the subject. If she first told her husband what Dr. Hillson related to her, then she invited an inquiry by the husband. " 'State-

ments in response to inquiries as to another person, when the inquirer is one naturally interested in his welfare, are privileged. They are statements . . . within the purview of [present OCGA § 51-5-7] . . . [The statement] was privileged, because it was elicited by one who had an interest in the answer, and therefore, if not made to anyone else, it would not be slanderous.' 'A qualified privilege attaches to communications relative to family matters, made in good faith to the proper parties by members, intimate friends and third persons under a duty to speak.' [Cit.] 'A communication is qualified privileged when made in good faith in answer to one having an interest in the information sought, or if volunteered, when the person to whom the communication is made has an interest in it, and the person by whom it is made stands in such a relation to him as to make it a proper or responsible duty to give the information.' [Cit.]" *Cochran v. Sears, Roebuck & Co.*, 72 Ga. App. 458, 462-63 (2) (34 SE2d 296) (1945). "It is enough that the complainant requests or consents to the presence of a third party and solicits the publication of matter which he knows or has reasonable cause to suspect will be unfavorable to him. [Cit.]" *Stone v. Brooks*, 253 Ga. 565, 566 (322 SE2d 728) (1984).

In addition, Dr. Hillson as Mrs. Thomas' physician had cause to consult with Mr. Thomas as a part of his patient's treatment. Thus the disclosure of Mrs. Thomas' possible infectious disease "was in the performance of a private duty, either legal or moral, on [his] part, to give such information, and was . . . made with a bona fide intent and without malice, with an interest to be upheld, and a statement properly limited in its scope, a proper occasion, and publication to a proper person. [Cits.]" *Cochran v. Sears, Roebuck & Co.*, supra at 463. Accord *Auer v. Black*, 163 Ga. App. 787, supra.

Summary judgment to Dr. Hillson on the allegations of slander was demanded.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 25, 1987.

*Vernon J. Neely,* for appellants.
*Wiley S. Obenshain III, Tandy M. Menk,* for appellee.